Good morning, Your Honors. Eric Slepian on behalf of Annett Pierce. I'm going to attempt to reserve three minutes for rebuttal. I'm here today in regard to Ms. Pierce's claim for Social Security disability benefits. She received a denial from an administrative law judge, and we're here asking you to vacate that decision. The law is relatively clear that if a decision is based on legal error, it should be reversed and remanded. And then the question will be whether it should be remanded for further proceedings or remanded for an award of benefits. Social Security uses a five-step sequential evaluation process. There are a number of errors. I'm just going to go in order. If you have any questions, please feel free to interrupt me. The key to the case, in my own view, which I'm only speaking for myself, is the partial rejection of Dr. Patel. There's an explanation as to why that is the doctor to be believed above all the others, and yet the report isn't believed in whole. That seems very inconsistent. So if you would address the step five issue, that's the one that most concerns me. Absolutely, Your Honor. And to answer your question, the case law specifically, Oren, as well as Lester v. Chater, talk about the weight to be given to various physicians, and basically treating physicians given great weight. If you set forth clear and convincing reasons to reject that, you can give then credence to the opinion of examining consulting physicians, and then at the bottom of the reviewing physicians. Dr. Patel is not a treating physician. He was a physician that was retained by the Social Security Administration. So first I would submit it's not sufficient to reject the treating physician opinion. But to answer your question, I can't tell you why the administrative law judge found it only partially credible. Dr. Patel performed a physical examination. He assessed restrictions and limitations. Those restrictions and limitations, including the handling and the fingering, were not accepted by the LJ, and one cannot fathom why they were not. She has had bilateral carpal tunnel syndrome. She's had physical therapy. What did Dr. Patel conclude with respect to the level of work she was capable of? Dr. Patel indicated that she could sit for two hours. He indicated that there would be limitations in, I believe, reaching. Did he conclude that she could only do sedentary work? That's a difficult question for me to answer because sedentary work is a very precise legal definition. So in general terms, in terms of his ‑‑ But you generally accept the doctors say so as to what's sedentary and what's not. Well, in terms of sedentary, most people think about it as sit, stand, walk, lift, and carry. In that regard, yes, Dr. Patel did assess what we call sedentary, but he found that there were further restrictions that would reduce that sedentary occupational base. The other point that I would like to make is that if we were to accept Dr. Patel and we were to assume sedentary even without those other restrictions and limitations, the LJ found Clayman could not perform her past work if she was age 50 or above, if she did not have skills that transfer to sedentary work. Her past work was semi‑skilled, is that correct? Correct. Okay. And he found that she could only do certain unskilled jobs. Correct. And if she's only qualified to do unskilled jobs, then is she considered disabled? If they're unskilled sedentary jobs. Unskilled sedentary jobs. Then the answer is yes. The grids would require a finding of disabled under that determination. Now, the jobs, you know, that the VE found her qualified for? Yes. Are those skilled or semi‑skilled? The VE testified that some of those jobs were semi‑skilled, but they are, in fact, unskilled. You're talking about unskilled under whose definition? The DOT or? The Dictionary of Occupational Titles and the specific occupation selector, which are the primary job sources for the Social Security Administration. And if they're to be deviated from, then the ALJ is required, pursuant to SSR00-4P, to identify that conflict and to resolve that conflict. He did not do that. Nobody did that in this case. In fact, I believe the indication was that the vocational consultant thought his testimony was consistent with the DOT. And as the Commissioner concedes, it's clearly not. I think out of the six jobs, five of them were inconsistent with the DOT, and all of those that were sedentary were not within claimant's functional capacity. But let me jump back to the opinion of the treating physician. According to Orn, if you have an opinion from a treating physician that is consistent with the medical record, it's to be given great weight unless the ALJ cites clear and convincing reasons. So first what the courts do or what an ALJ should do is look for a conflict, whether it's a conflict with the opinion of the treating physician. A conflict has a very specific definition. It's not, I'm a doctor and I disagree with what the claimant can and cannot do. It's, I'm a doctor and I disagree with the specific findings of the treating physician. I disagree based upon physical examination. I disagree based upon my review of objective medical evidence. I disagree on interpretation of medical evidence. Here there was no conflict. So to give less weight to the opinion of the treating physician without that conflict would be a legal error. Now, if you look at the report of Dr. Patel, he confirms basically the treatment that she's had, her impairments, difficulties with her grip, there's noted atrophy. Nobody is objecting or disagreeing with the findings in this case. It's just a question as to the functional capacity. So to use Dr. Patel to minimize or to change the opinion of the treating physician would be contrary to both Orn and Lester. But then they have, there's another problem that they run into, and that is the restrictions assessed by Dr. Patel, their own doctor, would be consistent with the finding of disabled. Well, that's the part that got, that troubled me that I was trying to get at in my earlier question. Even if one were to accept Dr. Patel, there's sort of this excising of the part that, a part of it without, to my mind, without particular explanation, because I'm not sure that Dr. Patel's opinion taken as a whole really runs contrary to your client's position. It does not. And that was one of the points that we've been raising. And then what's interesting in this case, Social Security also had a file review done by a physician who did not treat or examine the claimant. They agreed with the findings of Dr. Patel. So there's treating physicians who assessed restrictions that would preclude my client from sustaining work. There's Dr. Patel, which is their own doctor, who examined the claimant. And then there's a third doctor who only reviewed the records. And all those opinions would be consistent with the finding of disability. And yet the administrative law judge seems to pick here, pick here, pick here, and come to a conclusion that the claimant can't work. And if we try to figure out how he came to that conclusion, you can't tell from a fair reading of this decision. There's no identification of the specific evidence that would contradict the specific findings of any of the treating physicians, as well as the complaints of the claimant. And pursuant to law, they are required to do that, identify the specific evidence that they're relying on to substantiate a deviation from treating physician, examining consulting physician. And they really have to just cite strongly to that evidence so that the courts can figure out exactly where it stands. And the last point I'd like to make, because I'm up to my two-minute mark, is that if you look at Orn and Lester v. Chater, when you have a situation where the treating physician and the examining consulting physicians are similar, the administrative law judge's duty isn't just clear and convincing evidence, but he must cite to what they call an abundance of evidence. And clearly that wasn't done in this case. Thank you. Thank you. You have some rebuttal time remaining, and we'll hear from the commissioner. Good morning. Shay Bond on behalf of the Commissioner of Social Security. Your Honors, I'd like to address the question posed regarding Dr. Patel. The ALJ did expressly reject portions of Dr. Patel's functional limitations, and he did explain the reasons why. Well, I suppose one can say that it's an explanation. It seemed very brief and conclusory to me. It's a summary sentence saying the evidence as a whole doesn't indicate an objective reason for this particular limitation. But that's – that seems quite vague when he's otherwise saying this doctor's opinion is very well reasoned and much better than all these other doctors, but one piece of it I don't like. And it just seemed like an insufficient explanation. And if you would explain to me why you think that's a sufficient reason, I'd appreciate it. Your Honor, I think in the – from the paragraph that you just read, the ALJ was drawing a conclusion from the evidence that he had explained in prior paragraphs and in the decision. Prior paragraphs don't deal with Dr. Patel, though. But in the prior paragraphs, I would direct your Court's attention specifically to the two-hour standing limitation. Back on page 22 of the excerpts of record, there's that first paragraph where the ALJ is discussing in very detailed narrative the evidence relating to the knee impairment. The ALJ doesn't mention Dr. Patel by name, but he does mention that the State Agency doctor who performed the consultative examination – that is a reference to Dr. Patel – that she had a normal gait, that was not – with no limp, that there was no ligament instability. She had full ranges of motion with no warmth, swelling, or discoloration of the knees. So the ALJ was actually discussing the evidence. But why is that – I don't understand why that is inconsistent with the limitation of standing and walking for two hours out of an eight-hour day. It's that sort of logical connection that isn't made. She had a normal gait and so on and so forth. But that doesn't really speak to the durational issue, which is the issue that he's talking about there. Well, I think we can draw an inference from the – or the ALJ was able to draw an inference from the fact that on physical examinations, particularly of the knees, if there was really no objective evidence showing that there was something symptomatically wrong with her knees, that there is no basis then for limiting her to two hours of standing and walking. There should be no reason why she couldn't perform the, say, the six hours required for standing and walking of light work. I would also point out that the ALJ also imposed a sit-stand option in the RFC finding. This would allow the claimant to sit down after periods of time of standing. So it's not as though she was performing six hours of continuous walking during the day or standing during the day. She would also be permitted to sit down if she needed to. And according to what the vocational expert testified, there were hundreds of thousands of jobs that would permit this sort of activity. But again, I think the fact that Dr. Patel did not elicit any real objective findings with regards to her knee, there really is no basis for this two-hour standing and walking limitation. The ALJ was entitled to draw that inference. And under this court's case in Magalanes, an ALJ does not need to discuss all of the You can look at the decision as a whole. You can look to see that the ALJ actually gave a thorough and narrative discussion of the evidence and then draws this ultimate conclusion in, say, a separate paragraph, which here the ALJ did in determining that Dr. Patel had not substantiated the standing and walking limitation. The vocational expert was asked in part about unskilled sedentary jobs. Now, if that is the basis for finding that she has jobs that she can perform in the economy, in the workplace, that is that then she would be disabled. Is that correct? Well, if we were to assume that she was limited to sedentary and unskilled, yes. However, she had transferable skills in this case. The vocational expert had testified that she had transferable skills. If we're going to, if your question is going towards the grid, the appropriate grid rule would be 201.15, which directs that even a person of this age with the educational background and work experience with transferable skills would still be found not disabled if reduced to sedentary. I had another specific question about Dr. Patel's opinion. You said that there isn't really anything in the objective findings that could support a walking and standing limitation, but he does note that she has sensory loss in both legs, as well as arthritis and diabetes. And isn't it, I mean, he doesn't draw that connection, but aren't those objective findings that could support a limitation on walking and standing? I would say in taking the evidence as a whole, no. And I'm just asking about his opinion internally as to whether it is rational and internally consistent. I would say given the other objective findings that Dr. Patel elicited, which was, you know, the normal ranges of motion, that she didn't even walk with a limp, that she didn't require an assistive device to walk, that she would have some slight sensory limitations. I don't think that necessarily shows that she would only be able to perform the two hours of standing and walking a day. And again, I would also emphasize that the ALJ did also impose in the RFC finding the sit-stand option. So it isn't that she's required to do two hours of continuous standing and walking. She's able to take those breaks that if she found that, say, if there was a bit of sensory loss and maybe there was some numbness, that she would be able to sit down and to alleviate those symptoms during the workday. If we were to disagree with your position, I think the Petitioner asks that there be a remand, right, for the payment of benefits. You think if, assuming we're to disagree with your position, that's the correct result? If this Court were to find that substantial evidence did not support the decision and that remand was appropriate, we would strenuously disagree with the request to award benefits in this case. I would say that this ---- What else is there to do? Your Honor, I would say that it's not clear from this record that the claimant would be found disabled. There was multiple conflicting opinion evidence. This ---- the objective findings were conflicting. There were times when she would experience some negative symptoms, but there are also examination findings which show that she didn't have the symptoms that she's claiming are disabling. There ---- we would require to have fact-finding, more additional fact-finding before a determination of disability could be made. I would ---- Let me ask, sort of pursue Judge Teshima's question a little bit further. If we were to hold, and I know you don't agree with this, but if we were to hold that excising a portion of Dr. Patel's opinion was inappropriate and that his opinion as a whole had to be accepted, would that alter your answer at all? What would remain to be done? Again, the ---- I think there's other evidence in the record which would have to be That's not quite my question. If Dr. Patel's opinion were accepted entirely, and everything else in the case stayed the same, what would the result be as to disability finding? Well, Your Honor, I don't believe that Dr. Patel addressed the ---- any mental limitations that the claimant had. The RFC here is for unskilled to semi-skilled, and again, if the ---- given that the claimant had the transferability of skills, if the claimant were dropped down to a sedentary RFC, there's still that issue then whether she would be found disabled at the sedentary level. If you're applying the proper grid rule, she would still be found not disabled. So even with Dr. Patel's opinion, we still don't ---- Your Honors, in conclusion, if there are no further questions, we would argue that the ALJ's decision is supported by substantial evidence and is proper as a matter of law, and that the ALJ's decision should be affirmed. Thank you. Thank you. Mr. Slepian. I just want to cover a couple of things. Following up on that question regarding if we accept Dr. Patel's opinion, the Commissioner cited to a grid rule that utilizes transferable skills. I just want to remind the Court that the vocational expert was asked, if you needed to use transferable skills and the sit-stand option was required, would they be able to do it? And the answer was no. So the question has been asked. There's no reason to further develop this record. You cannot utilize those skills in any job that requires a sit-stand option. Also, there's no reason to develop the mental if the physical determines that the claimant's disabled. We don't have to do further development on whether the psychological impairment further restricts, because she's disabled. Why prolong this by another two years and put her through another hearing? And lastly, counsel indicated that there were multiple conflicting opinions, medical opinions. I respectfully disagree with that, as they all seem to indicate that the claimant wouldn't be able to sustain work. Thank you. Thank you very much. We appreciate very helpful arguments from both counsel. The case just argued is submitted.
judges: Tashima, Graber, Bybee